## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

**EUGENE SCALIA,**
Secretary of Labor, United States
Department of Labor,

        Plaintiff,

    v.

**PARAMOUNT INDUSTRIAL
MACHINING, INC., SHEILA
ROSSMANN, MAXWELL
SCHWARTZ, the PARAMOUNT
PRECISION PRODUCTS
401(K) PLAN, and the
PARAMOUNT INDUSTRIAL
MACHINING, INC. WELFARE
BENEFIT HEALTH PLAN**

        Defendants.

Case Number:  20-cv-12477

Judge:

Magistrate Judge:

## **COMPLAINT**

Plaintiff Eugene Scalia, Secretary of Labor, United States Department of

Labor ("Secretary"), acting by and through his attorneys, alleges as follows:

1.    This action arises under Title I of the Employee Retirement Income

Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001, *et seq.*, and is

brought by the Secretary under ERISA § 502(a)(2) and (5), 29 U.S.C. § 1132(a)(2)

and (5), to enjoin acts and practices that violate the provisions of Title I of ERISA,

to obtain appropriate equitable relief for breaches of fiduciary duty under ERISA §

409, 29 U.S.C. § 1109, and to obtain such further equitable relief as may be

appropriate to redress and to enforce the provisions of Title I of ERISA.

2.      This court has jurisdiction over this action pursuant to ERISA §

502(e)(1), 29 U.S.C. § 1132(e)(1).

3.      The Paramount Precision Products, Inc. 401(k) Plan ("401(k) Plan") is

an employee benefit plan within the meaning of ERISA § 3(3), 29 U.S.C. §

1002(3), that is subject to the provisions of Title I of ERISA pursuant to ERISA §

4(a), 29 U.S.C. § 1003(a).

4.      The Paramount Industrial Machining, Inc. Welfare Benefit Health

Plan ("Health Plan") is an employee benefit plan within the meaning of ERISA §

3(3), 29 U.S.C. § 1002(3), that is subject to the provisions of Title I of ERISA

pursuant to ERISA § 4(a), 29 U.S.C. § 1003(a).

5.      The 401(k) Plan and the Health Plan are named as defendants herein

pursuant to Federal Rule of Civil Procedure 19(a) solely to assure that complete

relief can be granted.

6.      Venue of this action lies in the Eastern District of Michigan pursuant

to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the 401(k) Plan and the

Health Plan were administered in Oak Park, Oakland County, Michigan, within

this district.

## DEFENDANTS AND PARTIES IN INTEREST
## UNDER ERISA RELATING TO THE 401(K) PLAN

7.    Paramount Precision Products, Inc. ("Paramount Precision"), was a Michigan corporation in the business of providing machining services from at least January 1, 2007, to February 10, 2017.

8.    Paramount Industrial Machining, Inc. ("Paramount Industrial") was a Michigan corporation in the business of providing machining services from at least February 10, 2017, through December 20, 2017.

9.    From at least September 18, 2015, to August 5, 2016, Paramount Precision was a fiduciary of the 401(k) Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A); and a party in interest to the Plan within the meaning of ERISA § 3(14)(A) and (C), 29 U.S.C. § 1002(14)(A) and (C).

10.    From at least September 18, 2015, to August 5, 2016, Defendant Sheila Rossmann was the sole owner and chief executive officer of Paramount Precision, the directed trustee of the 401(k) Plan, was a fiduciary of the 401(k) Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), and a party in interest to the 401(k) Plan within the meaning of ERISA § 3(14)(A), 29 U.S.C. § 1002(14)(A).

11.    On August 5, 2016, the U.S. District Court for the Eastern District of Michigan, Southern Division (Case No. 2:16-cv-12852-MFL-DRG) appointed

Gene R. Kohut of the Kohut Law Firm as receiver ("Receiver") to operate

Paramount Precision.

12.     On February 10, 2017, Paramount Industrial purchased substantially

all of Paramount Precision's assets on a going concern basis from the Receiver.[1]

13.     When Paramount Industrial purchased substantially all of Paramount

Precision's assets on a going concern basis from the Receiver, it took over

administration of the 401(k) Plan.

14.     From at least February 10, 2017, through March 31, 2020, Paramount

Industrial was a fiduciary of the 401(k) Plan within the meaning of ERISA §

3(21)(A), 29 U.S.C. § 1002(21)(A); and a party in interest to the Plan within the

meaning of ERISA § 3(14)(A) and (C), 29 U.S.C. § 1002(14)(A) and (C).

15.     From at least February 10, 2017, through March 31, 2020, Defendant

Maxwell Schwartz was the sole owner and president of Paramount Industrial, a

fiduciary of the 401(k) Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. §

1002(21)(A), and a party in interest to the 401(k) Plan within the meaning of

ERISA § 3(14)(A), (E), and (H), 29 U.S.C. § 1002(14)(A), (E), and (H).

16.     From at least February 10, 2017, through March 31, 2020, Defendant

Sheila Rossmann was the directed trustee of the 401(k) Plan, was a fiduciary of the

---

[1] Paramount Precision is not named as a defendant herein because Paramount
Industrial purchased substantially all of Paramount Precision's assets on a going
concern basis on February 10, 2017.

401(k) Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A),

and a party in interest to the 401(k) Plan within the meaning of ERISA § 3(14)(A),

29 U.S.C. § 1002(14)(A).

## DEFENDANTS AND PARTIES IN INTEREST
## UNDER ERISA RELATING TO THE HEALTH PLAN

17.     When Paramount Industrial purchased substantially all of Paramount

Precision's assets on a going concern basis from the Receiver, it also took over

administration of the Health Plan.

18.     From at least July 1, 2017, through September 29, 2017, Paramount

Industrial was the Health Plan Administrator; a fiduciary of the Health Plan within

the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A); and a party in interest

to the Plan within the meaning of ERISA § 3(14)(A) and (C), 29 U.S.C. §

1002(14)(A) and (C).

19.     From at least July 1, 2017, through September 29, 2017, Schwartz

was the sole owner and president of Paramount Industrial, a fiduciary of the Health

Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), and a

party in interest to the Health Plan within the meaning of ERISA § 3(14)(A), (E),

and (H), 29 U.S.C. § 1002(14)(A), (E), and (H).

## FACTUAL ALLEGATIONS AND
## RESULTING ERISA VIOLATIONS

### COUNT ONE
### Failure to Remit Participant Contributions to the
### 401(k) Plan Between September 18, 2015, and March 18, 2016

20.     Paragraphs 1 through 16 above are realleged and incorporated in these allegations.

21.     On May 1, 1999, Paramount Precision established the 401(k) Plan to provide retirement benefits to its employees.

22.     The 401(k) Plan was amended and restated effective as of January 1, 2014.

23.     The 401(k) Plan's governing documents provided in pertinent part that the 401(k) Plan would be funded through participants' pre-tax contributions from salary deferrals to the 401(k) Plan.

24.     The 401(k) Plan also permitted eligible participants to take loans from the Plan and repay the loans through employee salary deferral repayments.

25.     From at least September 18, 2015, through March 18, 2016, participants had employee salary deferral contributions and participant loan repayments withheld from their wages for remittance to the 401(k) Plan. During that same period, a total of $7,882.85 in participant contributions and participant loan repayments were withheld from employees' paychecks, but not remitted to the 401(k) Plan.

26.    The $7,882.85 in salary deferral contributions and participant loan repayments withheld by Paramount Precision from employees' paychecks, but not remitted to the 401(k) Plan between September 18, 2015, through March 18, 2016, were used to pay for Paramount Precision's corporate expenses and were not used for Plan purposes.

27.    From at least September 18, 2015, through March 18, 2016, Paramount Precision was responsible for remitting participant contributions and participant loan repayments to the 401(k) Plan.

28.    By the allegations described in paragraphs 20 through 27 above, Paramount Precision:

a.    failed to ensure that all 401(k) Plan assets were held in trust, in violation of ERISA § 403(a), 29 U.S.C. § 1103(a);

b.    failed to hold 401(k) Plan assets for the exclusive purpose of providing benefits to Plan participants and their beneficiaries and defraying reasonable expenses of administering the 401(k) Plan, in violation of ERISA § 403(c)(1), 29 U.S.C. § 1103(c)(1);

c.    failed to act solely in the interest of the participants and beneficiaries of the 401(k) Plan and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of 401(k)

Plan administration, in violation of ERISA § 404(a)(1)(A), 29 U.S.C. §

1104(a)(1)(A);

      d.    caused the 401(k) Plan to engage in transactions which it knew

or should have known constituted a direct or indirect transfer to, or use by or for

the benefit of, a party in interest, of assets of the 401(k) Plan, in violation of

ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D);

      e.    dealt with assets of the 401(k) Plan in its own interest in

violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1); and

      f.    acted on behalf of a party whose interests are adverse to the

interests of the 401(k) Plan or the interests of its participants and beneficiaries, in

violation of ERISA § 406(b)(2), 29 U.S.C. § 1106(b)(2).

    29.    As a direct and proximate result of Paramount Precision's fiduciary

breaches described in paragraphs 20 through 27 above, the 401(k) Plan suffered

injury and losses for which it is liable and subject to appropriate equitable relief,

pursuant to ERISA § 409, 29 U.S.C. § 1109.

### COUNT TWO
### Failure to Remit Participant Contributions to the
### 401(k) Plan Between February 10, 2017, and September 8, 2017

    30.    Paragraphs 1 through 16 above are realleged and incorporated in these

allegations.

31.     From at least February 10, 2017, to September 8, 2017, participants had employee salary deferral contributions withheld from their wages for remittance to the 401(k) Plan. During that same period, a total of $4,787.87 in participant contributions were withheld from employees' paychecks, but not remitted to the 401(k) Plan.

32.     The $4,787.87 in salary deferral contributions withheld by Paramount Industrial from employees' paychecks, but not remitted to the 401(k) Plan between February 10, 2017, to September 8, 2017, were used to pay for Paramount Industrial's corporate expenses and were not used for Plan purposes.

33.     From at least February 10, 2017, to September 8, 2017, Schwartz was responsible for remitting participant contributions and participant loan repayments to the 401(k) Plan.

34.     From February 10, 2017, to September 8, 2017, Schwartz caused Paramount Industrial not to remit the employee salary deferral contributions to the 401(k) Plan that were withheld from participating employees' pay.

35.     By the allegations described in paragraphs 30 through 34 above, Schwartz and Paramount Industrial:

        a.     failed to ensure that all 401(k) Plan assets were held in trust, in violation of ERISA § 403(a), 29 U.S.C. § 1103(a);

b.      failed to hold 401(k) Plan assets for the exclusive purpose of providing benefits to Plan participants and their beneficiaries and defraying reasonable expenses of administering the 401(k) Plan, in violation of ERISA § 403(c)(1), 29 U.S.C. § 1103(c)(1);

c.      failed to act solely in the interest of the participants and beneficiaries of the 401(k) Plan and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of 401(k) Plan administration, in violation of ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A);

d.      caused the 401(k) Plan to engage in transactions which they knew or should have known constituted a direct or indirect transfer to, or use by or for the benefit of, a party in interest, of assets of the 401(k) Plan, in violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D);

e.      dealt with assets of the 401(k) Plan in their own interest in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1); and

f.      acted on behalf of a party whose interests are adverse to the interests of the 401(k) Plan or the interests of its participants and beneficiaries, in violation of ERISA § 406(b)(2), 29 U.S.C. § 1106(b)(2).

36.     As a direct and proximate result of Schwartz and Paramount Industrial's fiduciary breaches described in paragraphs 30 through 34 above, the

401(k) Plan suffered injury and losses for which they are jointly and severally

liable and subject to appropriate equitable relief, pursuant to ERISA § 409, 29

U.S.C. § 1109.

### COUNT THREE
**Rossmann's Co-Fiduciary
Liability With Respect to the 401(k) Plan**

37.     Paragraphs 1 through 16 and 20 through 27 above are realleged and

incorporated in these allegations.

38.     From at least September 18, 2015, through March 18, 2016,

Rossmann failed to ensure that Paramount Precision administered the 401(k) Plan

in accordance with the 401(k) Plan's governing documents.

39.     Rossmann had knowledge of the breaches by Paramount Precision

described in paragraphs 20 through 27 above without making reasonable efforts

under the circumstances to remedy such breaches.

40.     By her acts and omissions described in paragraphs 38 through 39

above, Rossman failed to discharge her duties with respect to the 401(k) Plan

solely in the interest of the participants and beneficiaries, in violation of ERISA §

404(a)(1), 29 U.S.C. § 1104(a)(1).

41.     By her acts and omissions described in paragraphs 38 through 39

above, Rossman is liable, pursuant to ERISA § 405(a)(2), 29 U.S.C. § 1105(a)(2),

for the breaches of fiduciary responsibility by co-fiduciary Paramount Precision

with respect to the 401(k) Plan, as described in paragraphs 20 through 27 above, because, by failing to comply with ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), in the administration of its specific responsibilities, she enabled another fiduciary to commit a breach.

42.     By her acts and omissions described in paragraphs 38 through 39 above, Rossman is liable, pursuant to ERISA § 405(a)(3), 29 U.S.C. § 1105(a)(3), for the breaches of fiduciary responsibility by co-fiduciary Paramount Precision with respect to the 401(k) Plan, as described in paragraphs 20 through 27 above, because she had knowledge of the breaches by Paramount Precision and did not make reasonable efforts under the circumstances to remedy the breaches.

**COUNT FOUR**
**Failure to Allocate Forfeiture Assets Properly**

43.     Paragraphs 1 through 16 above are realleged and incorporated in these allegations.

44.     The 401(k) Plan's governing plan documents define "forfeitures" as "that portion of a Participant's Account that is not Vested and is disposed of in accordance with the provisions of the Plan."

45.     The 401(k) Plan's governing plan documents define "Administrator" as "the Employer."

46.     The 401(k) Plan's governing plan documents require the following regarding forfeitures: "Forfeitures must be disposed of no later than the last day of

the Plan Year following the Plan Year in which the Forfeiture occurs. The

Employer must direct the Administrator to use Forfeitures to reinstate previously

forfeited Account balances of Participants, if any, . . . to satisfy any contribution

that may be required pursuant to Section 6.10 [when the location of the participant

or beneficiary is unknown], or, to pay any Plan expenses."

47.     Between July 26, 2016, and March 31, 2020, a total of $15,492.78

was allocated to the 401(k) Plan forfeiture account and was not used for 401(k)

Plan expenses, employer matching contributions, or allocated to participants as the

401(k) Plan's governing documents require.

48.     From February 17, 2017, through March 31, 2020, Paramount

Industrial, Rossmann, and Schwartz failed to use the $15,492.78 in 401(k) in Plan

forfeitures for 401(k) Plan expenses, employer matching contributions, or

allocation to participants as the 401(k) Plan's governing documents require.

49.     By the allegations described in paragraphs 43 through 48 above,

Paramount Industrial, Rossmann, and Schwartz:

a.      failed to act solely in the interest of the participants and

beneficiaries of the 401(k) Plan and for the exclusive purpose of providing benefits

to participants and their beneficiaries and defraying reasonable expenses of 401(k)

Plan administration, in violation of ERISA § 404(a)(1)(A), 29 U.S.C. §

1104(a)(1)(A); and

b.      failed to discharge their duties in accordance with the documents and instruments governing the 401(k) Plan insofar as the documents and instruments are consistent with ERISA, in violation of ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D).

50.     As a direct and proximate result of Paramount Industrial, Rossmann, and Schwartz's  fiduciary breaches described in paragraphs 43 through 48 above, the 401(k) Plan suffered injury and losses for which they are jointly and severally liable and subject to appropriate equitable relief, pursuant to ERISA § 409, 29 U.S.C. § 1109.

<u>**COUNT FIVE**</u>
**Failure to Administer the 401(k) Plan Properly**

51.     Paragraphs 1 through 16 above are realleged and incorporated in these allegations.

52.     The 401(k) Plan's governing documents have a 6-year graded vesting schedule for employer contributions and further provide, "Upon any full or partial termination or upon the complete discontinuance of the Employer's Contributions to the Plan (in the case of a Profit Sharing Plan), all amounts credited to the affected Participants' Combined Accounts shall become 100% Vested and shall not thereafter be subject to Forfeiture."

53.     The 401(k) Plan's governing documents further provide, "Upon the full termination of the Plan, the employer shall direct the distribution of assets to participants . . . [and] no Participant or spousal consent is required."

54.     The 401(k) Plan's governing documents further provide, "Notwithstanding anything in the Plan to the contrary, unless a Participant otherwise elects, payments of benefits under the Plan will begin not later than the sixtieth (60th) day after the close of the Plan Year in which the latest of the following events occurs: (a) the date on which the Participant attains the earlier of age 65 or the Normal Retirement Age specified herein; (b) the tenth (10th) anniversary of the year in which the Participant commenced participation in the Plan; or (c) the date the Participant terminates service with the Employer."

55.     All of the participants in the 401(k) Plan were terminated from their employment with Paramount Industrial as of December 20, 2017.

56.     The 401(k) Plan has 15 participants with account balances totaling $468,814.35 which as of March 31, 2020, had not been distributed.

57.     Schwartz,  Rossmann, and Paramount Industrial failed to distribute the account balances totaling $468,814.35 to the 15 participants as the 401(k) Plan's governing documents require.

58.     By the allegations described in paragraphs 51 through 57 above, Schwartz, Rossmann, and Paramount Industrial:

15

a.      failed to act solely in the interest of the participants and beneficiaries of the 401(k) Plan and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of 401(k) Plan administration, in violation of ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A); and;

b.      failed to discharge their duties in accordance with the documents and instruments governing the 401(k) Plan insofar as the documents and instruments are consistent with ERISA, in violation of ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D).

### COUNT SIX
### Failure of Fiduciaries to Maintain Fidelity Bond

59.     Paragraphs 1 through 16 above are realleged and incorporated in these allegations.

60.     From at least February 10, 2017, through the present, neither Paramount Industrial nor Schwartz maintained a fidelity bond to protect the 401(k) Plan's assets.

61.     By the allegations described in paragraphs 59 through 60 above, Schwartz and Paramount Industrial failed to ensure that the fiduciaries were bonded, in violation of ERISA § 412(a) and (b), 29 U.S.C. § 1112(a) and (b).

## COUNT SEVEN
### Failure to Remit Participant Contributions to the Health Plan

62.　Paragraphs 1 through 12 and 17 through 19 above are realleged and incorporated in these allegations.

63.　On July 1, 2016, Paramount Precision sponsored the Paramount Precision Products, Inc. Health and Welfare Plan (the "Predecessor Plan").

64.　The Predecessor Plan provided fully-insured medical, dental, and vision benefits (all of which were provided by United Healthcare Insurance Company) to Paramount Precision's eligible employees.

65.　Beginning on February 10, 2017, Schwartz permitted Paramount Industrial's employees to continue their participation in the Predecessor Plan arrangement with United Healthcare Insurance Company coverage.

66.　Effective April 1, 2017, Paramount Industrial, using the name "Paramount Precision Products," entered into an Employee - Worksite Employer Service Agreement (the "PEO Agreement") with Dynamic HR Services, LLC ("Dynamic").

67.　The PEO Agreement allowed Industrial's employees to enroll in fully-insured medical, dental and vision benefits under the Dynamic HR Services, LLC Group Plan, which provided benefits through Priority Health Managed Benefits, Inc. ("Priority Health Managed Benefits"), Delta Dental Plan of Michigan, Inc.

("Delta Dental Plan of Michigan"), and EyeMed Vision Care, LLC ("EyeMed Vision Care") (collectively, "Insurance Carriers").

68.     The Health Plan's governing documents provided in pertinent part that the Health Plan would be funded through participants' pre-tax contributions from salary deferrals and employer contributions.

69.     From at least July 1, 2017, to September 29, 2017, participants had employee salary deferral contributions withheld from their wages for the payment of Health Plan premiums. During that same period, a total of $14,346.71 in employee contributions to the Health Plan were withheld from employees' paychecks, but were not used to pay Health Plan premiums to the Insurance Carriers.

70.     The $14,346.71 in salary deferral contributions withheld by Paramount Industrial from employees' paychecks, but not used to pay Health Plan premiums to the Insurance Carriers between July 1, 2017, to September 29, 2017, were used to pay for Paramount Industrial's corporate expenses and were not used for Health Plan purposes.

71.     From at least July 1, 2017, to September 29, 2017, Schwartz was responsible for remitting participant contributions for payment of Health Plan premiums to the Insurance Carriers.

72.     From July 1, 2017, to September 29, 2017, Schwartz caused Paramount Industrial not to remit the employee salary deferral contributions that were withheld from participating employees' pay to the Health Plan or for payment of Health Plan premiums to the Insurance Carriers.

73.     By the allegations described in paragraphs 62 through 72 above, Schwartz and Paramount Industrial:

a.     failed to act solely in the interest of the participants and beneficiaries of the Health Plan and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of Health Plan administration, in violation of ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A);

b.     caused the Health Plan to engage in transactions which they knew or should have known constituted a direct or indirect transfer to, or use by or for the benefit of, a party in interest, of assets of the Health Plan, in violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D);

c.     dealt with assets of the Health Plan in their own interest in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1); and

d.     acted on behalf of a party whose interests are adverse to the interests of the Health Plan or the interests of its participants and beneficiaries, in violation of ERISA § 406(b)(2), 29 U.S.C. § 1106(b)(2).

74.     As a direct and proximate result of Schwartz and Paramount

Industrial's fiduciary breaches described in paragraphs 62 through 72 above, the

Health Plan suffered injury and losses for which they are jointly and severally

liable and subject to appropriate equitable relief, pursuant to ERISA § 409, 29

U.S.C. § 1109.

**<u>COUNT EIGHT</u>**
**Paramount Industrial and Schwartz**
**Misinformed Participants Regarding their Failure**
**to Pay Health Plan Premiums, Which Resulted in the Retroactive**
**Termination of the Participants' Insurance**

75.     Paragraphs 1 through 12, 17 through 19, and 62 through 72 above are

realleged and incorporated in these allegations.

76.     From at least July 1, 2017, to September 29, 2017, Paramount

Industrial failed to pay monthly medical, visual, and dental insurance premiums

due under the Dynamic HR Services, LLC Group Plan.

77.     From at least July 1, 2017, to September 29, 2017, Industrial's

employees' paychecks clearly stated the amount of deductions from gross pay for

health, vision, and dental insurance, identifying such amounts as deductions.

78.     As a result of Paramount Industrial's failure to pay monthly medical,

vision, and dental insurance premiums, Health Plan participants were retroactively

terminated from coverage in the Dynamic HR Services, LLC Group Plan.

79.     In a letter dated August 9, 2017, Dynamic informed Health Plan participants their participation in the Dynamic HR Services, LLC Group Plan was terminated retroactive to June 30, 2017.

80.     Because Schwartz and Paramount Industrial misinformed Health Plan participants their contributions to the Health Plan were being remitted for the payment of insurance premiums as of July 1, 2017, through the deductions from Industrial's employees' paychecks described in paragraph 77 above, Health Plan participants and beneficiaries continued to seek medical, vision, and dental services as usual through at least August 3, 2017.

81.     Because Schwartz and Paramount Industrial continued to withhold contributions to the Health Plan from participants' salaries, Health Plan participants and beneficiaries reasonably believed they continued to be covered by the health insurance in which they had enrolled.

82.     As a result of Schwartz and Paramount Industrial's failure to pay premiums and their misinforming participants through the deductions from Industrial's employees' paychecks described in paragraph 77 above, which resulted in the total retroactive cancelation of their medical, vision, and dental insurance benefits, one participant was billed at least $7,505.74 for uncovered medical services due solely to the fact that they lacked insurance coverage because the fiduciaries failed to pay the required premiums.

83.     By the allegations described in paragraphs 75 through 82 above, Schwartz and Paramount Industrial:

a.     failed to act solely in the interest of the participants and beneficiaries of the Health Plan and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of Health Plan administration, in violation of ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A);

b.     failed to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B);

c.     caused the Health Plan to engage in transactions which they knew or should have known constituted a direct or indirect transfer to, or use by or for the benefit of, a party in interest, of assets of the Health Plan, in violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D);

d.     dealt with assets of the Health Plan in their own interest in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1); and

e.      acted on behalf of a party whose interests are adverse to the

interests of the Health Plan or the interests of its participants and beneficiaries, in

violation of ERISA § 406(b)(2), 29 U.S.C. § 1106(b)(2).

84. As a direct and proximate result of Schwartz and Paramount

Industrial's fiduciary breaches described in paragraphs 75 through 82 above, the

Health Plan suffered injury and losses for which they are jointly and severally

liable and subject to appropriate equitable relief, pursuant to ERISA § 409, 29

U.S.C. § 1109.

## PRAYER FOR RELIEF

WHEREFORE, the Secretary prays for judgment:

A.      Permanently enjoining Schwartz, Rossmann, and Paramount

Industrial from violating the provisions of Title I of ERISA;

B.      Ordering Schwartz, Rossmann, and Paramount Industrial to make

good to the 401(k) Plan all losses, including interest, resulting from fiduciary

breaches committed by them or for which they are liable;

C.      Ordering Schwartz and Paramount Industrial to make good to the

Health Plan all losses, including interest, resulting from fiduciary breaches

committed by them or for which they are liable;

D.      Ordering Schwartz and Paramount Industrial to pay, as an equitable

surcharge, Health Plan participants for those Health Plan participants' losses,

including interest, resulting from fiduciary breaches committed by them or for which they are liable;

     E.     Requiring Schwartz, Rossmann, and Paramount Industrial to disgorge all ill-gotten gains resulting from their violations of Title I of ERISA;

     F.     Removing Schwartz, Rossmann, and Paramount Industrial from their positions as fiduciaries with respect to the 401(k) Plan and the Health Plan;

     G.     Permanently enjoining Schwartz, Rossmann, and Paramount Industrial from serving as fiduciaries or service providers to ERISA-covered plans;

     H.     Appointing an independent fiduciary to terminate the 401(k) Plan and the Health Plan;

     I.     Ordering Defendants Schwartz, Rossmann, and Paramount Industrial to pay all reasonable fees and expenses incurred by the independent fiduciary in terminating the 401(k) Plan and the Health Plan;

     J.     Awarding the Secretary the costs of this action; and

K.      Ordering such further relief as is appropriate and just.

**FOR DEFENDANTS:**                    **FOR PLAINTIFF:**

                                       **KATE O'SCANNLAIN**
                                       Solicitor of Labor

                                       **CHRISTINE Z. HERI**
                                       Regional Solicitor

                                       /s/ Kevin M. Wilemon
                                       **KEVIN M. WILEMON**
                                       Trial Attorney

**LOCAL COUNSEL:**                     Attorneys for **EUGENE SCALIA**
                                       Secretary of Labor
**MATTHEW SCHNEIDER**                  U.S. Department of Labor
United States Attorney                 Plaintiff

**PETER A. CAPLAN (P30643)**           Office of the Solicitor
Assistant U.S. Attorney                U.S. Department of Labor
                                       230 S. Dearborn St., Room 844
211 W. Fort Street, Ste. 2001          Chicago, IL 60604
Detroit, MI 48226                      Telephone No.:  312/353-6973
Telephone: (313) 226-9784              Fax No.: 312/353-5698
Email:   peter.caplan@usdoj.gov        E-mail: wilemon.kevin@dol.gov